UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

ROSS MACLIN,

        Plaintiff,

v.                                        Case No.  2:15-cv-00076
                                        HON.  ROBERT HOLMES BELL

SUSAN WILSON,

        Defendant.

_____/

REPORT AND RECOMMENDATION

Plaintiff Ross Maclin filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Nurse Practitioner Susan Wilson. Plaintiff alleges that Defendant violated his First and Eighth Amendment rights by withholding necessary medical treatment and medication in retaliation for his filed grievances, which resulted in Plaintiff's undue pain and suffering.  Plaintiff is currently incarcerated at the Thumb Correctional Facility.

On December 11, 2013, while Plaintiff was confined at the Chippewa Correctional Facility, Plaintiff was hospitalized after he reported seeing double and vomiting violently. He was diagnosed with vertigo resulting from an ear infection and prescribed antibiotics and a one week long regimen of Antivert (vertigo medication). At a follow-up medical examination on December 19, 2013, Defendant found Plaintiff's ear infection to have mostly healed with some redness remaining in his ear canal. Defendant did not prescribe additional Antivert because his antibiotic should have resolved the ear infection, as well as the related dizziness. (PageID.83-85). Defendant saw Plaintiff in a follow up visit one week later. Defendant found an improvement in his ear

condition and did not find a medical need for Antivert at that time. Defendant also instructed Plaintiff on some techniques that are used to decrease vertigo. (PageID.205-210).  Plaintiff was then seen by a physician on December 30, 2013. At that time, the physician found only a minor outer ear infection and prescribed ear drops to treat it. Plaintiff was not prescribed Antivert as the physician did not see a medical need for it. (PageID.198-204). On January 2, 2014, Plaintiff had an audiogram, at which time he reported not being able to hear in his right ear. (PageID.197). However, at a follow up visit on January 13, 2014, the physician did not find any abnormalities in Plaintiff's ear, and Plaintiff was found to be able to hear and respond when called from a distance. Additionally, the physician did not observe any signs of vertigo. The physician determined that Plaintiff's ear infection had resolved and he no longer had a medical need for Antivert or any other medication at that time. (PageID.186-190). Plaintiff's records do not show any complaints of vertigo between his physician visit on January 13, 2014 and April 2, 2014.

On April 2, 2014, Plaintiff was seen by a physician for chronic care. At that time, he complained of dizziness, vertigo, and nausea. The physician observed a small right ear perforation (a hole in the eardrum), which is a condition that typically resolves on its own within a few weeks. The physician instructed Plaintiff on protective measures for his ear, such as keeping it dry, and prescribed Antivert for two months, advising Plaintiff to only take it when experiencing vertigo. (PageID.174-175). Plaintiff next complained of dizziness and vomiting on July 22, 2014. He was seen by medical staff on July 28, 2014, where the physician found mild scarring on both of Plaintiff's eardrums. The physician then prescribed Plaintiff Antivert for three months. (PageID.159-168). On October 22, 2014, Defendant saw Plaintiff for a chronic care visit. Plaintiff complained of occasional dizziness and demanded to stay on Antivert. Defendant examined Plaintiff's ear canals and found them to be normal and fully healed. Although Plaintiff's ears were healed, Defendant

- 2 -

prescribed him a limited dose of 20 pills of Antivert a month to combat his complaints of recurring vertigo. Defendant instructed Plaintiff that Antivert should be rarely used, at which time Plaintiff became confrontational and demanded a witness be present in the room. Plaintiff then left the healthcare unit before the conclusion of his examination. (PageID.143-146). Defendant determined that because Plaintiff was not complaining of vertigo daily, and because Antivert is not meant to be used daily, his level of complaints did not require more than 20 pills a month. Additionally, as a Hepatitis C patient, Plaintiff is susceptible to liver fibrosis and needs to limit his medication intake to only those that are absolutely necessary. By limiting Plaintiff's Antivert prescription, Defendant sought to limit the advancement of his liver fibrosis. (PageID.89-90).

On November 17, 2014, Plaintiff submitted a healthcare request for Antivert. He was then reminded by healthcare staff that he already had an active limited order for Antivert. (PageID.140). Defendant does not receive or respond to healthcare requests and was thus unaware of Plaintiff's request. On April 23, 2015, Defendant saw Plaintiff for a chronic care visit. Plaintiff complained of dizziness, headaches, and occasional abdominal pain. Upon examination, Defendant found Plaintiff's ears to be normal. When examining his abdomen, Defendant found mild hepatic (liver) tenderness. Defendant continued Plaintiff's Antivert prescription for 20 capsules a month to be used as needed. (PageID.130-135). Defendant did not see Plaintiff after this visit, as he was transferred to a different facility on October 6, 2015. Plaintiff's records do not indicate that he suffered any side effects as a result of taking 20 pills of Antivert monthly, rather than 30. (PageID.91).

Plaintiff alleges that Defendant's conduct (specifically, reducing his Antivert prescription from 30 to 20 pills each month) was done in retaliation for the grievances he filed against the supervising prison doctor, and led to his undue pain and suffering for 10 or more days

each month that he did not have access to Antivert. Defendant states that she was not aware of any grievances filed against prison medical staff, and that she reduced Plaintiff's dosage based on a medical evaluation of his condition, the improvement of said condition, and considering Plaintiff's overall physical condition.

Both Plaintiff and Defendant file for summary judgement. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

- 4 -

Plaintiff's complaint alleges that Defendant has violated Plaintiff's Eighth Amendment rights.  The Supreme Court has held that deliberate indifference to a prisoner's serious illness or injury states a violation of the Eighth Amendment's "cruel and unusual punishments" clause because it constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976).  However, not every claim by an inmate of inadequate medical treatment rises to the level of an Eighth Amendment violation.

The standard by which such claims are judged involves two elements:  the plaintiff's medical need must be "serious," and the plaintiff must show that the defendants were "deliberately indifferent" to that need.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

"Deliberate indifference" requires an intentional effort to deny or ignore plaintiff's need for medical care.  *Estelle*, 429 U.S. at 105; *see also, Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D. N.Y. 1984), aff'd, 762 F.2d 990 (2d Cir. 1985).  Thus injury resulting from mere negligent conduct is insufficient to state an Eighth Amendment claim under Section 1983.  *Estelle*, 429 U.S. at 105; *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986).  Rather, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).

Complaints that the doctor did not prescribe a specific medication or should have ordered specific tests or negligently failed to provide adequate medical care may state a claim for malpractice under state law but do not state a claim that an inmate's federal rights have been violated. *See, Williams v. Duckworth*, 598 F. Supp. 9, 13-15 (N.D. Ind. 1983), *aff'd without opinion*,

749 F.2d 34 (7th Cir. 1984).  In *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976), cited in *Estelle*,

the Sixth Circuit remarked:

> Where a prisoner has received some medical attention and the dispute
> is over the adequacy of the treatment, federal courts are generally
> reluctant to second guess medical judgments and to constitutionalize
> claims which sound in state tort law.

*Id*. at 860, n. 5.

Plaintiff fails to show that he has a serious medical need for 30 tablets of Antivert

each month. His records show that he does not complain of vertigo and dizziness every single day

and oftentimes going several days without having a need for Antivert. Plaintiff also claims to be

hearing impaired and in need of a hearing aid. However, medical examinations of his ears have only

shown a small, temporary inner ear injury that has since healed, and further examinations have

proven that he is able to hear from a distance, as well as when not directly facing the speaker.

Moreover, Plaintiff fails to show that Defendant's conduct amounted to "deliberate indifference".

While Defendant did decrease Plaintiff's dosage of Antivert, she did so exercising sound medical

judgement and for legitimate medical reasons. While Plaintiff's examination showed that his ear

infection had healed, Defendant continued to prescribe him Antivert after he complained of

persistent spells of vertigo and only limited the prescription due to his liver fibrosis, a condition that

requires one to limit one's medication intake to only what is absolutely necessary. Defendant did

not deliberately neglect or deny Plaintiff medical care. The fact that Plaintiff disagrees with

Defendant's medical treatment plan for him does not constitute "deliberate indifference" and is not

a violation of his constitutional rights.

Plaintiff claims that he was being withheld medication in retaliation to his filing of

grievances against medical staff. Retaliation based upon a prisoner's exercise of his or her

constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

Plaintiff asserts protected conduct of filing grievances against medical staff, and he therefore meets the first element of the three-part test for a First Amendment retaliation claim. However, Plaintiff has not established that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in protective conduct. Defendant repeatedly met with Plaintiff and addressed his medical concerns. She limited Plaintiff's Antivert dosage for valid medical reasons and for the purpose of preserving his liver health, and therefore did not engage in conduct that a reasonable person within the medical profession would not have engaged in. Moreover, looking at Plaintiff's history of complaints of vertigo and requests for Antivert, his history shows that he does not make daily complaints, which would make 20 Antivert tablets a month sufficient and reasonable. Plaintiff therefore fails to establish the second element of a First Amendment retaliation claim. Plaintiff claims that Defendant's conduct was motivated by retaliation

against him, however, Defendant testified that she was not aware of any grievances against any of the prison medical staff and that it was not prison policy to make her aware of grievances brought against others. Although Plaintiff makes allegations that Defendant told him she was reducing his medication because of his grievances, his claims are not supported by any evidence. Plaintiff therefore fails to establish that Defendant's conduct was motivated, at least in part, by retaliation and does not have a valid First Amendment retaliation claim.

Plaintiff does not present any evidence that would raise a question of material fact for a jury to decide. Plaintiff admits that he was seen by an ear specialist, and admits that he had access to 20 tablets of Antivert each month to treat his vertigo and nausea. His alleged need for a higher number of Antivert tablets is not supported by medical evidence and is simply a disagreement regarding his treatment that does not amount to a constitutional violation.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for Summary Judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #13) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: June 20, 2016                     /s/ TIMOTHY P. GREELEY
                                         TIMOTHY P. GREELEY
                                         UNITED STATES MAGISTRATE JUDGE