UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROSS MACLIN,

        Plaintiff,

                                      File No. 2:15-cv-76

v.

                                      HON. ROBERT HOLMES BELL

SUSAN WILSON,

        Defendant.
_____/

# OPINION

This is a civil rights action filed by a prisoner under 42 U.S.C. § 1983. Plaintiff Ross Maclin claims that Defendant Nurse Practitioner Susan Wilson denied him his rights under the First and Eighth Amendments. In particular, Plaintiff alleges that on October 22, 2014, and April 23, 2015, Defendant examined him and issued a prescription for 20 tablets of Antivert per month, instead of his previous prescriptions for 30 tablets per month.[1] She allegedly told him that she was doing so because of grievances that he had filed.

On June 20, 2016, Magistrate Judge Timothy P. Greeley issued a Report and Recommendation ("R&R") recommending that the Court grant Defendant's motion for summary judgment. (ECF No. 23.) This matter is before the Court on Plaintiff's objections to the R&R. (ECF No. 24.)

---

[1] According to Plaintiff, a prescription for 20 tablets is equivalent to a prescription for 20 days, and a prescription for 30 tablets is equivalent to a prescription for full month (30 days). (*See* Compl., ECF No. 1, PageID.6-7.)

This Court makes a *de novo* determination of those portions of an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.*

Upon *de novo* review, the Court will adopt the R&R insofar as it recommends granting summary judgment with respect to Plaintiff's Eighth Amendment claim. The Court will not adopt the R&R insofar as it recommends granting summary judgment with respect to Plaintiff's retaliation claim.

## I.

Plaintiff's symptoms of vertigo first arose in December 2013, after he sustained an injury to his head and complained of pain in his right ear. (Medical Records, ECF No. 15-1, PageID.233.) Following a visit to the emergency room, he was given antibiotics and a one-week prescription for Antivert, which is used to treat dizziness and nausea. (*Id.* at PageID.229.) By December 20, he was determined to be "stable," with "no complaints" related to his ears, though he continued to report dizziness. (*Id.* at PageID.217, 215.)

On December 26, after his prescription for Antivert expired, he was examined by a nurse. Plaintiff complained of dizziness "at times," pain, and trouble hearing, but he was observed walking steadily and briskly to the healthcare unit. (*Id.* at PageID.205-10.) A visual

inspection of his right ear canal showed that it had improved, but it was still swollen, so antibiotics were continued. (*Id.* at PageID.205.)

At an appointment on December 30, Plaintiff continued to complain about dizziness, but he was observed walking with a steady gait after he returned to his unit. (*Id.* at PageID.204.) At the time, his right ear canal was still swollen. (*Id.* at PageID.203.) The physician determined that there was "minimal objective evidence of illness" and no medical indication for Antivert. (*Id.* at PageID.201.)

Plaintiff was given an audiogram on January 2, 2014, and he reported no response in his right ear. (*Id.* at PageID.197.) On January 6, he was given a prescription for antibiotic ear drops. (*Id.* at PageID.196.) At a follow-up visit with the doctor on January 13, he reported "light dizzy spells" and headaches on the right side, but demonstrated no signs of vertigo and there was no sign of inflammation in his ear canal. (*Id.* at PageID.187, 188.) Consequently, the physician determined that there was no medical indication for Antivert. (*Id.* at PageID.189.)

Several months later, on April 2, 2014, Plaintiff was seen by a nurse regarding "complaints of recurrent episodes of dizziness, nause[a], vomiting, hearing loss, vertigo and feeling of un[s]teadiness." (*Id.* at PageID.175.) The nurse discovered a perforation in his right ear drum. (*Id.* at PageID.176.) He was given a 60-day prescription for Antivert, until June 2, 2014. (*Id.* at PageID.174.)

On July 24, he met with a nurse regarding complaints of dizziness and nausea occurring "off/on." (*Id.* at PageID.165.) The nurse referred him to the doctor, who examined

Plaintiff on July 28. The doctor noticed a small perforation and scarring on his right ear drum. (*Id.* at PageID.161-62.) He continued Plaintiff's prescription for Antivert until October 31, 2014. (*Id.* at PageID.163.) A follow-up appointment was scheduled for the end of October to assess the perforation in his near. (*Id.*)

Defendant examined Plaintiff on October 22, 2014. According to Plaintiff, she told him:

> I remember you, you're the one that filed all those grievances against Dr. Brotoski crying about deafness, and pain. I'm cutting you off your Antivert, you're not deaf or suffering or anything. . . . I don't treat smartasses like yourself that get free medical treatment when people in society has to pay for it, and you have the nerve to file a grievance. I'm not authorizing you any treatment because you file them grievances.

(ECF No. 1, PageID.5-6.)

According to Plaintiff's medical records, Defendant determined that his right ear was "unremarkable" upon inspection. (ECF No. 15-1, PageID.145.) She continued his prescription for Antivert until April 30, 2015, but limited it to 20 pills per month. (*Id.* at PageID.143, 146.) Plaintiff asked to retain his current prescription, but Defendant told him that Antivert should be used "rare[ly]." (*Id.* at PageID.146.) He became upset and told her about grievances that he had filed in the past. (*Id.*)

Plaintiff requested more Antivert medication from healthcare services on November 17, 2014, but Nurse Brown denied his request. (*Id.* at PageID.140; Compl., PageID.7.) For the next twelve months, there is no evidence in Plaintiff's medical records that he complained about a need for more than 20 pills per month. Plaintiff asserts that he sent a request for

4

treatment on December 1, 2014, for symptoms of "[d]isequilibrium, deafness in right ear, comiting, nausea, inability to sleep, difficulty walking, . . . headaches, and earaches," but that no one responded. (Compl., PageID.7.)

Defendant saw Plaintiff again on April 23, 2015. Plaintiff complained about headaches and dizziness, as well as hearing problems in his right ear. (ECF No. 15-1, PageID.133.) His right ear was inspected and it appeared to be normal. (*Id.*) She continued his prescription for 20 tablets of Antivert per month. (*Id.* at 134.)

## II.

The Court will not restate the standard for summary judgment or the elements of a retaliation claim, which are adequately stated in the R&R.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care

test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer,* "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical

> malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

### III.

**<u>Objection 1</u>**

Plaintiff first objects to the magistrate judge's determination that "Plaintiff's records do not indicate that he suffered any side effects as a result of taking 20 pills of Antivert monthly, rather than 30." (R&R 3.) Based on this determination, the magistrate judge concluded that Plaintiff "failed to show that he has a serious medical need for 30 tablets of Antivert each month. His records show that he does not complain of vertigo and dizziness every single day and often times [goes] several days without having a need for Antivert." (*Id.* at 6.)

In his objections, Plaintiff offers medical records purporting to show that he has dizzy spells without Antivert. (*See* Ex. E to Objections, ECF No. 24-1, PageID.398-99.) One is from December 30, 2013, when he told the medical provider that after his initial prescription for Antivert expired, he "just don't feel right." (*Id.* at PageID.399.) Another is from January 13, 2014, and it reports that Plaintiff complained about headaches and "light dizzy spells." (*Id.* at PageID.397.)

These reports do not undermine the magistrate judge's determination because they are from a time period (December 26, 2013 to April 2, 2014) in which Plaintiff did not have a prescription for Antivert. The question in this case is not whether Plaintiff needed Antivert, but whether his condition was severe enough that he needed 30 pills per month. Defendant did not stop him from receiving Antivert; she reduced his prescription to 20 pills per month.

The fact that Plaintiff suffered dizzy spells without *any* prescription for Antivert does not mean that he would suffer when given a prescription of 20 tablets a month.

Moreover, the records from December 2013 and January 2014 are far removed in time from Defendant's conduct. Evidence of occasional dizzy spells in January 2014, almost a year prior to Defendant's decision to change his dose, does not demonstrate that he needed a daily dose of Antivert in October 2014. Thus, the Court agrees that the foregoing evidence does not support his assertion that he needed Antivert on a daily basis (i.e., 30 pills per month) in October 2014, when Defendant reduced his prescription.

Plaintiff also offers excerpts from his verified complaint which assert that, on November 12, 13, 14, 17, 18, and 19, 2014, as well as December 1, 2014, he suffered severe dizziness, headaches, earaches, and lack of balance as a result of being deprived of a 30-day supply of Antivert. (Compl., ECF. No. 1, PageID.6.) Although the magistrate judge correctly described Plaintiff's medical records, it did not mention Plaintiff's sworn statements. These statements are part of the evidentiary record.

Nevertheless, the foregoing statements do not save Plaintiff's claim. They show that Plaintiff suffered severe side effects for approximately one week without access to an adequate supply of Antivert. Even assuming that they are sufficient to show an objectively serious medical need, they do not show that Defendant was deliberately indifferent to this need.

Plaintiff's history of vertigo was initially associated with a head injury and an infection in his ear. When his ear infection resolved, his Antivert medication was

9

discontinued by a physician who determined that, despite Plaintiff's complaints, a continuing prescription was not medically indicated. For the next three months, Plaintiff did not have a prescription for Antivert, and there is no indication that he needed one. After his symptoms of dizziness returned in April 2014, a physician discovered a perforation in his ear drum and restored his prescription for Antivert.

Based on this medical history, Defendant reasonably determined that Plaintiff's symptoms were associated with objectively observable problems in his ear, and that after these problems disappeared, his need for Antivert would diminish. (*See* Wilson Aff. ¶ 26, ECF No. 13-3.) This sort of decision is a clear instance of the exercise of medical judgment, not deliberate indifference to a serious medical need. Plaintiff offers no evidence demonstrating that Defendant was aware of facts from which to draw the reasonable inference that a daily dose of Antivert was necessary to avert Plaintiff's symptoms.

Indeed, after October 2014, Plaintiff remained on a reduced dosage for almost an entire year, until he was transferred to another facility in October 2015. During this entire time period, there is no evidence that he suffered without a 30-day supply of Antivert, other than the seven days in November/December that are alleged in the complaint. There is also no evidence that he requested additional medication, apart from two instances in November and December of 2014.

In response to the motion for summary judgment, Plaintiff offered records which he claimed would show that he complained about vertigo on a daily basis. (*See* Pl.'s Resp. to Mot. for Summ. J. 3, ECF No. 17 (citing Ex. F to Pl.'s Resp., ECF No. 17-2, PageID.289-

91).) But these records show the opposite of what he claims. In June, July, and August 2015, Plaintiff received *fewer* than 20 tablets of Antivert each month.[2] (*See id.*) If he needed Antivert every day, then presumably he would have used all 20 tablets every month. Consequently, the Court finds that Plaintiff's statements and evidence are insufficient to create a question of fact as to whether Defendant was deliberately indifferent to an objectively serious need for 30 tablets of Antivert per month.

**<u>Objection 2</u>**

Plaintiff also objects to the magistrate judge's discussion that Plaintiff claims to be hearing impaired, but that an examination of his ear showed only a "small, temporary inner ear injury that has since healed, and further examinations have proven that he is able to hear from a distance, as well as when not directly facing the speaker." (R&R 6, ECF No. 23.) In his objections, Plaintiff contends that he suffered from a hearing impairment that was getting worse, and that Defendant disregarded his needs by failing to send him to a specialist for further assessment.

Although Plaintiff makes allegations about his hearing problems in the complaint, he does not allege that Defendant failed or refused to send him to a specialist. A plaintiff generally may not raise a new claim or theory of recovery for the first time in response to a motion for summary judgment. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).

---

[2]Another chart appears to show that he actually received 30 pills in November 2014 (even though he was prescribed 20). (ECF No. 17-2, PageID.283.)

Moreover, Plaintiff's claim fails because there is no evidence to support his assertion that he suffered from a deteriorating hearing impairment. Where a prisoner's claim is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier*, 238 F.3d at 742. Plaintiff has not done so here. Indeed, Plaintiff reported a *complete* loss of hearing in his right ear to several healthcare providers from December 2013 to July 2014, *before* Defendant examined him in October 2014. (Medical Records, PageID.160, 165, 166, 175, 187, 196, 199, 203; *see also* Compl. ECF No. 1, Page ID.5 (alleging "deafness" in Plaintiff's right ear in December 2013 and July 2014).) By October 2015, *after* Defendant last examined Plaintiff, a physician determined that Plaintiff had only "moderate" hearing loss in his right ear. (ECF No. 19-2, PageID.316.) In other words, Plaintiff's condition improved during the time that Defendant allegedly should have referred him to a specialist. Consequently, even assuming that a claim regarding lack of care for his hearing loss was adequately pleaded in the complaint, there is no evidence that Defendant's alleged refusal to refer him to a specialist in October 2014 or April 2015 had a detrimental effect.

### Objection 3

Plaintiff further objects to the magistrate judge's determination that Defendant reduced Plaintiff's prescription for Antivert, in part, because she believed that a lower dosage would slow the advancement of Plaintiff's liver disease. (R&R 7; Wilson Aff. ¶ 20.) Plaintiff

12

contends that Defendant's decision conflicts with that of Drs. Kilaru and Naimey, who prescribed Antivert for 30 days per month. However, a difference in treatment by different healthcare providers does not establish deliberate indifference. *See Mitchell v. Hininger*, 553 F. App'x 603, 606 (6th Cir. 2014) ("Choosing one doctor-supported treatment regimen over another doctor-supported treatment regimen does not amount to deliberate indifference."); *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("[A] § 1983 claim based on the Eighth Amendment is not present when a doctor disagrees with the professional judgment of another doctor, as there are several ways to treat illness."). Moreover, even if Defendant was wrong about the risks of Antivert, Plaintiff has not demonstrated a genuine issue of fact for the reasons stated with respect to Objection 1.

**Objection 4**

The R&R rejected Plaintiff's retaliation claim, in part, because Defendant testified in her deposition that she was not aware of any grievances filed against her supervisor. The R&R stated that, "Plaintiff makes allegations that Defendant told him she was reducing his medication because of his grievances, [but] his claims are not supported by any evidence." (R&R 8.) This statement is incorrect. As indicated above, Plaintiff's complaint contains a sworn allegation that Defendant told him that she was aware of his grievances against Dr. Brotoski and that she was not authorizing treatment because of those grievances. These sworn allegations are evidence supporting Plaintiff's retaliation claim. Moreover, these allegations are sufficient to create a genuine factual dispute for trial. Thus, Plaintiff's objection will be granted.

**Objection 5**

Plaintiff contests the statement in the R&R that Defendant's decision to reduce Plaintiff's dosage of Antivert due to concerns about his liver was an "exercis[e] [in] sound medical judg[]ment" based on "legitimate reasons." (R&R 6.) This objection is merely a restatement of Objection 3, and is without merit for the same reasons. Even if Defendant was incorrect about the impact of Antivert on his liver, she continued to provide treatment. There is no evidence that she was aware of a serious need for 30 pills per month rather than 20. Thus, Plaintiff's objection does not save his Eighth Amendment claim.

**Objection 6**

Regarding Plaintiff's retaliation claim, the magistrate judge also determined that reducing Plaintiff's medication was not an adverse action because her decision was based on "valid medical reasons" and his medical history does not show that he needed more than 20 pills of Antivert per month. (R&R 7.) But as Plaintiff notes, the sworn allegations in Plaintiff's complaint are evidence that she reduced his medication due to his protected conduct. Whether or not she also had valid medical reasons for her decision does not preclude the possibility that her conduct was motivated, at least in part, by his protected conduct.

Furthermore, Plaintiff is correct that the evidence is sufficient to create an issue of fact as to whether Defendant's conduct was sufficiently adverse to give rise to a retaliation claim. "Retaliation against a prisoner is actionable if it is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X v. Blatter*, 175

F.3d 378, 398 (6th Cir. 1999). Although certain deprivations "are so de minimis that they do not rise to the level of being constitutional violations," the requisite "threshold is intended to weed out only inconsequential actions[.]" *Id.* "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

Reducing Plaintiff's medication was a deprivation, and according to Plaintiff, this deprivation resulted in some discomfort. In other words, Defendant's decision was not inconsequential. Thus, Plaintiff has presented sufficient evidence to create a question of fact as to whether Defendant's conduct was sufficiently adverse to deter Plaintiff from engaging in protected activity. Consequently, the Court will not adopt the R&R insofar as it recommends granting summary judgment on Plaintiff's retaliation claim.

An order will enter consistent with this Opinion.


Date: <u>September 23, 2016</u>   /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE